UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH PELTIER,

    Plaintiff                                Civil Action No. 13-14847
v.                                           HON.  LAURIE J. MICHELSON
                                             U.S. District Judge
                                             HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Peltier ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Docket #13] be DENIED, that Plaintiff's motion for summary judgment [Docket #9] be GRANTED, and that the case be REMANDED FOR AN AWARD OF BENEFITS.

## PROCEDURAL HISTORY

On May 3, 2011, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging disability as of May 15, 2010 (Tr. 115).  After the initial denial of the claim,

Plaintiff requested an administrative hearing, held on July 9, 2012 in Mt. Pleasant, Michigan before Administrative Law Judge ("ALJ") JoErin O'Leary (Tr. 24). Plaintiff, represented by attorney Aaron Lemmens, testified (Tr. 33-48), as did Vocational Expert ("VE") Richard Riedl[1] (Tr. 49-54 ). On August 10, 2012, ALJ O'Leary found that Plaintiff was not disabled (Tr. 11-24).

On September 23, 2013, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on November 25, 2013.

## BACKGROUND FACTS

Plaintiff, born June 29, 1981,was 31when the ALJ issued her decision (Tr. 24, 115). He completed 11th grade (Tr. 135) and worked previously as a receiving clerk (Tr. 135). He alleges disability due to gastroparesis, back problems, and anxiety (Tr. 134).

### A.   Plaintiff's Testimony

Plaintiff offered the following testimony:

Due to the condition of gastroparesis, he experienced constant stomach pain and nausea resulting in vomiting (Tr. 33). He took medication for the condition which prevented him from vomiting, but he nonetheless experienced constant nausea (Tr. 33). He also experienced lower back pain which prevented him from doing "anything physical" (Tr. 33-34). He stopped physical therapy because he lost his medical insurance and because he experienced only negligible improvement from the sessions (Tr. 33). He now coped with

---

[1]The VE's name is misspelled as "Reedle" in the hearing transcript (Tr. 11, 29).

back pain by sleeping on couch (Tr. 33). He was unable to sleep for more than four hours at a time due to back pain (Tr. 36).

Plaintiff rated his typical level of back pain as a "seven" on a scale of one to ten (Tr. 34). He was unable to lift more than 10 pounds, sit or walk for more than 10 minutes, or stand for more than 20 (Tr. 35). He was unable to engage in his former pastime of roller hockey (Tr. 35). He avoided going to the movies or restaurants due to anxiety and the inability to sit for long periods (Tr. 35). He was no longer able to mow the lawn or garden (Tr. 35). His ability to squat was limited (Tr. 36). He took morphine and experienced the medication side effects of dry mouth and eyes (Tr. 36). Plaintiff's inability to lift heavy items prevented him from returning to his former work (Tr. 37). The condition of anxiety was characterized by heart palpitations, shortness of breath, and loss of appetite (Tr. 38).

Plaintiff underwent back surgery in 2009 to address lower extremity pain and numbness (Tr. 38). The surgery reduced his leg and foot pain but did not relieve the back pain (Tr. 38). He was hospitalized two years earlier for pancreatitis resulting from alcohol abuse but had not used alcohol in the past two years (Tr. 39). He attended AA meetings almost every night (Tr. 39). He received psychotropic medication from a family physician since losing his medical insurance (Tr. 40). In addition to two hospitalizations for pancreatitis, he had one inpatient stay for gastroparesis (Tr. 41). In addition to gastroparesis, back pain, and anxiety, he experienced migraine headaches around three times a week (Tr. 42). He had been advised by a gastroenterologist that the condition of gastroparesis would

not improve (Tr. 45).  After leaving high school, Plaintiff obtained a GED (Tr. 52).

    **B.**    **Medical Evidence**

### 1. Treating Sources

January, 2008 treating records by Craig R. Sonke, M.D. note Plaintiff's history of depression, polysubstance abuse (in remission), and "irritable GI tract" (Tr. 441).  Plaintiff reported that he was working 50 hours each week (Tr. 441).  Dr. Sonke's September, 2008 records note Plaintiff's report of nausea and vomiting (Tr. 438).  October, 2008 records state that Plaintiff reported continued gastric symptoms and weight loss (Tr. 432).  In December, 2008, Plaintiff reported that vomiting had been reduced to "once every other week" (Tr. 428).

In February, 2009, Plaintiff reported a resurgence of nausea (Tr. 424).  In August, 2009, Dr. Sonke noted that Plaintiff had been diligent in complying with medical advice and obtaining diagnostic studies (Tr. 414).  In September, 2009, Plaintiff reported lower back pain radiating into his right leg after lifting a box of nails at work (Tr. 409).  October, 2009 diagnostic studies were consistent with a diagnosis of gastroparesis (Tr. 455).  An MRI of the lumbar spine showed a herniated disc fragment at L5-S1 (Tr. 206).  The following month, Plaintiff underwent a hemilaminotomia of the lumbar spine (Tr. 200).  In January, 2010, Plaintiff sought emergency treatment for flank pain (Tr. 191).  Imaging study results were consistent with a diagnosis of pancreatitis (Tr. 215).  Discharge records note the diagnoses of pancreatitis, alcohol withdrawal, depression, and migraines (Tr. 184). Plaintiff was hospitalized the following month for nausea and vomiting (Tr. 188).  In April, 2010, Plaintiff

underwent botox injections to the esophagus and stomach to address symptoms of gastroparesis (Tr. 202). Todd K. Holtz, M.D. noted that the procedure had "less than a 50% chance of improving" Plaintiff's condition (Tr. 202). Both Dr. Sonke's and Dr. Holtz's records state that Plaintiff did not experience significant improvement from the injections (Tr. 397, 472). The same month, psychiatrist Kerry L. Pierce, M.D. assigned Plaintiff a GAF of 65, noting the diagnoses of generalized depression and anxiety[2] (Tr. 282-283, 495-496).

The following month, gastroenterologist Rafat Rizk, M.D. prescribed Neurontin for pain relief (Tr. 228). In August, 2010, Plaintiff reported less vomiting but continued abdominal pain (Tr. 366). In October, 2010, Plaintiff commenced pain management treatment (Tr. 256-262). Plaintiff reported continued panic attacks (Tr. 307-308). Dr. Pierce opined that Plaintiff's gastroparesis medication could be increasing his psychiatric symptoms (Tr. 303). In November, 2010, Plaintiff reported reduced levels of discomfort but continued to experience "low levels of abdominal pain and fatigue" (Tr. 231). Plaintiff reported that it was "hard . . . to work and concentrate" (Tr. 231). The following month, Plaintiff reported "wonderful" results from Nucynta, but noted "fairly constant" abdominal pain (Tr. 251). Dr. Sonke's notes from the same month state that he experienced "mild" nausea but continued abdominal pain (Tr. 392). Plaintiff reported that he was lifting "mild weights" and could walk for 30 minutes on a treadmill (Tr. 392). Dr. Sonke stated that he continued to have

---

[2]GAF scores in the range of 61–70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* ("*DSM-IV-TR*"), 34(4th ed. 2000).

"intermittent episodes where he ha[d] to sit down and rest" (Tr. 392). Plaintiff noted that he was only working two shifts each week and continued to experience "chronic" low back pain (Tr. 392).

January, 2011 psychiatric intake examination records note Plaintiff's history of anxiety, depression, insomnia, and polysubstance dependence (in remission) (Tr. 222). Dr. Kerry's treating notes state that Plaintiff was doing "better than in a long time" (Tr. 485). Plaintiff reported reduced symptoms of gastroparesis since beginning a new medicine, but noted that sleep disturbances as a result of stomach pain occurred "several times per week" (Tr. 222). Plaintiff reported attending AA meetings on a daily basis (Tr. 223). Psychiatrist Julia Burrow, M.D. assigned him a GAF of 50[3] (Tr. 225-226). Physical therapy records indicate that Plaintiff experienced reduced strength in the lumbar spine (Tr. 605). The following month, Plaintiff reported continued abdominal pain, severe depression, anxiety, and back pain (Tr. 246). Ryan W. Bearer, D.O. noted that Plaintiff had an unremarkable gait and 5/5 strength between L2 and L4 (Tr. 246). Plaintiff reported that he was able to walk for 30 minutes on a treadmill (Tr. 245).

In March, 2011, Plaintiff reported "fairly constant" abdominal pain, "worse with sitting, standing, and walking . . . " (Tr. 239). He reported a "set back" while attempting

---

[3] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM-IV-TR* at 34.

to work out, noting that his back was "'killing him'" (Tr. 385, 538). He reported that he had cut back his time on the treadmill to 15 minutes (Tr. 385). Physical therapy records state that Plaintiff's functional abilities decreased as a result of back pain (Tr. 603). Dr. Kerry's notes from the same month state that Plaintiff was working only one day a week due to back pain (Tr. 484).

Dr. Sonke's April, 2011 records state that Plaintiff reported continued back pain but no radiculopathy (Tr. 379). Physical therapy records note an improvement from the previous month (Tr. 601). May, 2011 therapy records state that Plaintiff was making slow improvement (Tr. 599). Dr. Kerry's June, 2011 records note Plaintiff's report that his back pain "overpower[ed]" the abdominal pain" (Tr. 482). The same month, Dr. Sonke noted Plaintiff's reports of headaches between four and five days each week (Tr. 543). Plaintiff reported that he was unable to stay on a treadmill for more than 10 minutes (Tr. 543). Physical therapy notes also state that he was unable to tolerate more than 10 minutes on the treadmill (Tr. 595). Dr. Sonke remarked that Plaintiff's blood sugar levels were consistent with diabetes (Tr. 543). In August, 2011, Dr. Sonke noted that Plaintiff did not experience frequent headaches, but was required to miss work because of back pain (Tr. 511). Treating notes from later the same month state that Plaintiff was unable to afford recommended epidural injections (Tr. 548).

September, 2011 physical therapy notes state that Plaintiff had made no further progress since his last appointment and had recently lost his job (Tr. 593). Dr. Sonke

requested that Plaintiff be limited to working one day a week for four hours (Tr. 548). December, 2011 treating notes state that Plaintiff described his back and abdominal pain as "a dully achy type sensation" but that he appeared "over-sedated" (Tr. 590). Dr. Sonke characterized the conditions of anxiety and depression as "still a pretty major problem" (Tr. 590).

### 2. A Non-Treating Source

In July, 2011, Robert Newhouse, M.D. reviewed Plaintiff's psychiatric records, finding the presence of mild limitation in activities of daily living, and moderate limitation in social functioning and concentration, persistence, and pace (Tr. 60-61). He concluded that Plaintiff could perform simple tasks on a sustained basis (Tr. 66). The same month, Eric VanderHaagen, D.O. examined Plaintiff's medical records, finding that Plaintiff could lift 10 pounds frequently and 20 occasionally; sit, stand, and walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 62). He found that Plaintiff was limited to occasional climbing of ladders, ropes, and scaffolds and frequent climbing of stairs/ramps, balancing, stooping, kneeling, and crouching (Tr. 63). He found that Plaintiff should avoid "hazards" due to the use of prescription pain killers (Tr. 64).

### C.  Vocational Expert Testimony

VE Riedl classified Plaintiff's former job as a warehouse worker as exertionally medium and semiskilled[4] (Tr. 52). The ALJ then presented the following set of limitations

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a

to the VE, describing a hypothetical individual of Plaintiff's age, education, and work history:

> [A]ssume this individual could perform sedentary exertional work but in addition, this individual would need the opportunity to sit, to sit or stand as needed to alleviate pain complaints, but not more often than once every half an hour to change positions. This individual would not be able to climb ladders, ropes, or scaffolds. They could not kneel. They could not crawl. They would not have any social limitations in terms of interacting with co-workers and supervisors but they could tolerate no more than occasional interaction with the general public. They would be limited to – they could understand, remember, and carry out simple instructions. They would perform best in a low stress work environment which would be defined as work that did not require more than occasional independent decision making, more than occasional changes in the work setting, or more than occasional use of independent judgment. . . . With those restrictions, presumably there would be no past work that such an individual could perform (Tr. 52-53).

The VE stated that the above limitations would preclude the individual from performing Plaintiff's past relevant work but would allow him to perform the sedentary, unskilled work of a production inspector (1,500 in the lower peninsula of Michigan); bench assembler (2,500); and surveillance system monitor (1,600) (Tr. 53-54). The VE testified that if the same individual were required to miss more than three days each month due to medical and psychological issues or, if the individual were "off task" for 20 percent of the

---

time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

workday due to "chronic pain and nausea," no work would be available (Tr. 54).

### D. The ALJ's Decision

Citing the medical evidence, the ALJ found that Plaintiff experienced the severe impairments of "chronic pain, pancreatitis, gastroparesis, migraines, restless leg syndrome, degenerative disc disease status post hemilaminectomy, generalized anxiety disorder and major depressive disorder" (Tr. 13-17). She found that none of the conditions met or medically equaled an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 14). She found that Plaintiff experienced mild deficiencies in activities of daily living and social functioning, and moderate limitation in concentration, persistence, or pace (Tr. 15-16). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for sedentary work with the following limitations:

> [C]laimant must sit or stand as needed to alleviate pain complaints but cannot change positions more than once every half hour. He cannot kneel, crawl, or climb ladders, ropes, or scaffolds. The claimant can have no more than occasional interaction with the general public. He can understand, remember, and carry out simple instructions. The claimant can perform work in a low stress work environment, meaning work that would not require more than occasional independent decision-making, changes in the work setting, and use of independent judgment (Tr. 17).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to return to his past work, he could perform the sendentary, unskilled work of a production inspector, bench assembler, or surveillance system monitor (Tr. 23, 53-54).

The ALJ discounted Plaintiff's allegations of disability. She cited January, March, and December, 2011 treating notes stating that Plaintiff did not experience significant

abdominal discomfort (Tr. 18). In regard to the allegations of migraine headaches, the ALJ noted that Plaintiff denied significant headaches in August, 2011 (Tr. 18). The ALJ also found that the allegations of back pain were not borne out by the treating records showing full muscle strength, a normal gait, and the ability to walk for extended periods (Tr. 18). She observed that while Plaintiff received a number of modes of treatment for the allegedly disabling physical and mental conditions, "the treatment [was] generally successful in controlling [the] symptoms" (Tr. 18-19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the

administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Credibility Determination

Plaintiff argues that the hypothetical question to the VE did not account for his full

degree of impairment.[5] *Plaintiff's Brief*, 6-12, *Docket #9*. He contends, in effect, that the omission of critical psychological and physical limitations from the hypothetical question invalidates the Step Five finding that he was capable of a significant range of work. *Id.* at 6-7 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)). He contends that his testimony that he experienced constant nausea, back pain, and anxiety was well supported by treating records. *Plaintiff's Brief* at 10-11.

As argued by Plaintiff, the question of whether the ALJ erred by omitting the alleged limitations from the hypothetical question depends in large part on whether her credibility determination was supported by substantial evidence. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in hypothetical to VE). The credibility determination, guided by SSR 96-7p, describes the required two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.,*1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or

---

[5] Plaintiff's brief also contains a recitation of the "treating source rule," but is unaccompanied by any citation to a treating source opinion. *Plaintiff's Brief* at 12-14. August, 2011 treating records indicate that Dr. Sonke asked Plaintiff's employer to limit his work hours to a four-hour shift one day a week (Tr. 548). However, her request cannot be interpreted to state that she believed that Plaintiff would be unable to perform substantial gainful employment for 12 months or longer as required by 42 U.S.C. §423(d)(1)(A).

functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [6] "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' " *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir.2007) (citing *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); See also *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989) (citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

The ALJ rejected Plaintiff's allegations of disability "because of significant inconsistencies" between his claims and "the record as a whole" (Tr. 18). She found that Plaintiff exaggerated his limitations (Tr. 18). She quoted his December, 2010 statement that

---

[6]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

a new medication was "working 'wonderfully'" (Tr. 18). She cited January, 2011 records showing that Plaintiff was able to stand for one hour and do 30-pound bench presses and March, 2011 observations of a steady gait (Tr. 18, 20). She cited March, 2011 treating records noting the absence of abdominal tenderness (Tr. 18). The ALJ noted that Plaintiff denied lower extremity radiculopathy at an April, 2011 appointment (Tr. 18). She relied on May, 2011 records to support the conclusion that he obtained good results from physical therapy (Tr. 19). She noted that psychiatric treating records showed a normal affect and thought process (Tr. 19).

Plaintiff's claim that the ALJ downplayed the psychological limitations or that the psychological limitations were not reflected in the hypothetical question to the vocational expert is not well taken. The hypothetical modifiers of unskilled work with "simple instructions" performed in a "low stress" environment and only "occasional independent decision making" comports with the psychiatric treating records showing mostly mild or moderate restriction (Tr. 52-53). I note further that Plaintiff's longstanding psychological conditions did not prevent him from working full time before the onset of the back and stomach problems. The administrative decision contains an accurate summation of his level of psychological limitation as found in the testimony and treating records.

In contrast, the ALJ's credibility findings as to the physical limitations are not well supported. While the ALJ found "significant inconsistencies" between the professed physical limitations and the transcript, Plaintiff's testimony of limitations is almost wholly

supported by the treating records. His claim that the medication for gastroparesis stopped him from vomiting but did not quell nausea and/or abdominal pain is supported by numerous treating records from August, 2010 forward (Tr. 222, 231, 239, 246, 251, 366, 392, 482). Plaintiff's testimony that he experienced only minimal improvement from physical therapy and slept on a couch to ease back pain is confirmed by September, 2011 therapy discharge notes (Tr. 33, 593). Plaintiff's testimony that he was unable to sit or walk for more than 10 minutes or lift more than 10 pounds following a March, 2011 exacerbation of back problems is supported by both physical therapy and medical treating records (Tr. 35, 38, 385, 482, 538, 543, 593, 595). His claim that the 2009 back surgery eliminated radiculopathy of the lower extremities but did not resolve back pain is reflected in the November, 2010 through December, 2011 treating and therapy records (Tr. 246, 379, 385, 392, 590, 605).

Moreover, the ALJ's purported reasons for rejecting Plaintiff's testimony amount to a distortion of the same records. While she relied on December, 2010 records showing good results from a new medication, the same records show that he continued to experience nausea and abdominal pain (Tr. 392). The ALJ cited treating notes from the same period showing that Plaintiff was able to stand for one hour, walk for 30 minutes, and do 30-pound bench presses (Tr. 18). However, the treating and therapy notes indicate that Plaintiff's brief improvement was curtailed by a March, 2011 "setback" in his back condition ultimately reducing his treadmill time to 10 minutes (Tr. 379, 385, 543). The subsequent records are consistent with Plaintiff's testimony that he was unable to walk for more than 10 minutes (Tr.

35).

In regard to the allegations of back pain, the ALJ cited January through early March, 2011 to show that Plaintiff could walk for half an hour and bench press 30 pounds (Tr. 18). However, the medical transcript shows that this progress was short-lived. The ALJ's summation of the records from March, 2011 and forward is of particular concern. While she cited a March, 2011 record stating that Plaintiff denied significant abdominal tenderness, she ignored the medical and therapy records showing that Plaintiff's physical abilities were sharply reduced that month due to an exacerbation of back pain (Tr. 385, 603). The ALJ cited May, 2011 physical therapy records indicating a small improvement in Plaintiff's functional abilities (Tr. 19, 599). However, she made no mention of the March, 2011 therapy records showing that he had lost "a lot of strength and endurance" (Tr. 603). The May, 2011 records (read alongside the March, 2011 records) indicate that Plaintiff experienced a major setback in his condition followed by a modest gain from the March, 2011 low point. Notably, September, 2011 therapy discharge notes state that Plaintiff had failed to make any recent progress and was now unable to sleep in his own bed due to worsening back pain (Tr. 593). The May, 2011 records, read in context, do not support the ALJ's finding that Plaintiff obtained significant improvement from physical therapy. "'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record." *Laskowski v. Apfel*, 100 F.Supp.2d 474, 482 (E.D.Mich.2000) (Roberts, J.)(citing *Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir.1981). Further, while the ALJ concluded that Plaintiff's

allegations of limitation were not credible, the medical transcript contains no suggestion that he exaggerated his symptoms.

Likewise, the ALJ's citation to Dr. Sonke's December, 2011 treatment notes to support the conclusion that the back pain "was doing fairly well," ignores Dr. Sonke's accompanying observation that Plaintiff appeared "over-sedated" and required a reduced dosage of a prescribed medication (Tr. 590-591). At best, it is unclear whether his lack of symptomology was due to an improvement in his condition or because he was heavily sedated at the time of the appointment. Because the ALJ's selective reliance on "fragments" of the record amounts to a distortion of the record it cannot be said that substantial evidence supports the credibility determination. *Laskowski,* at 482. To be sure, the RFC for a limited range of sedentary work incorporates some of the professed limitations. However, Plaintiff's testimony as to his need for frequent rest periods due to back pain and a chronic and distracting gastric condition, if credited, would nonetheless result in a finding of disability. Because the ALJ's present reasons for rejecting Plaintiff's claims are not well supported or explained, a remand is warranted.[7]

---

[7]

Dr. VanderHaagen, a non-examining source, found in July, 2011 that Plaintiff could perform exertionally light work (Tr. 62-64). However, the ALJ accorded his opinion "little weight" because the evidence submitted after that time showed a greater degree of limitation (Tr. 21). Further, the fact that the non-examining source found a greater degree of limitation than suggested by the treating notes does not cure the ALJ's impermissibly selective account of the treating history.

The ALJ's flawed credibility determination, along with the clear and compelling clinical support for Plaintiff's claim of persistent and chronic back and gastric pain, demonstrates that the Commissioner did not carry her Step Five burden of showing that Plaintiff was capable of sustained employment, even at the sedentary jobs described in the ALJ's decision. Therefore, the case should be remanded for an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Docket #13] be DENIED, that Plaintiff's motion for summary judgment [Docket #9] be GRANTED, and that the case be REMANDED FOR AN AWARD OF BENEFITS.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                    s/ R. Steven Whalen
                                                    R. STEVEN WHALEN
                                                    U.S. MAGISTRATE JUDGE

November 30, 2014

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 30, 2014, electronically and/or by U.S. mail.

                                                      s/Carolyn M. Ciesla
                                                    Case Manager to
                                                    the Honorable R. Steven Whalen